# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT PARISE,**

    **Plaintiff,**

    v.                                                Case No. 18-CV-1670

**ANDREW M. SAUL[1],**
**Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

**Procedural History**

Plaintiff Robert Parise alleges that he has been disabled since December 31, 2010. In March 2014 he applied for supplemental security income benefits (Tr. 203) and disability insurance benefits (Tr. 209). After his applications were denied initially (Tr. 63-86) and upon reconsideration (Tr. 87-114), a hearing was held before an administrative law judge (ALJ) on February 14, 2017 (Tr. 38-62). On August 4, 2017, the ALJ issued a written decision concluding Parise was not disabled. (Tr. 18-30). The appeals council denied Parise's request for review on June 13, 2018. (Tr. 1-5). This action followed. All

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

parties have consented to the full jurisdiction of a magistrate judge (EFC Nos. 3, 4), and this matter is now ready for resolution.

**Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**Analysis**

The ALJ concluded that Parise suffered from the following severe impairments: "bilateral carpal tunnel syndrome, status-post left pneumonectomy, obesity, major

depressive disorder, generalized anxiety disorder, and polysubstance dependence." (Tr. 21.) The ALJ concluded that Parise has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a)and 416.967(a) except he cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. In addition, the claimant must all avoid (sic) exposure to dusts, odors, fumes, and other types of pulmonary irritants and even moderate exposure to extreme heat or hazards such as unprotected heights and moving mechanical parts. Further, he is limited to understanding, remembering, and carrying out simple instructions, only occasional interaction with supervisors and co-workers, only casual or incidental interaction with the public, in an environment requiring only simple, work-related decisions and only occasional change in work location.

(Tr. 22.)

Despite identifying it as a severe impairment and noting that that Parise continued to complain of pain related to carpal tunnel syndrome even after surgery, the ALJ did not appear to account for Parise's carpal tunnel syndrome in her RFC finding. This despite the fact that Parise's carpal tunnel syndrome was severe enough to require surgery. Moreover, surgery was completed only on Parise's left wrist; for reasons unclear from the record, Parise never had the recommended surgery on his more severely impaired right wrist.

The Commissioner contends that the ALJ accommodated Parise's carpal tunnel syndrome by limiting him to sedentary work. The Commissioner points to the following statement of the ALJ:

> The State agency medical consultants assessed that the claimant could perform exertionally light or medium work with some postural limitations (Exhibits 3A-6A). I give these assessments little weight because evidence received at the hearing level shows that the claimant was more functionally limited than the State agency consultants had opined (Exhibits 9F-13F). In particular, these records show that the claimant continued, despite treatment, to report ongoing pain symptoms and that he underwent surgical procedures for carpal tunnel syndrome and resection of a malignant lung mass.

(Tr. 26.)

In this statement the ALJ explained why she was discounting the opinions of the state agency medical consultants. But the ALJ was not saying that she found that a limitation to sedentary work accommodated Parise's carpal tunnel syndrome. All she said was that, in part because he had surgery for his carpal tunnel syndrome, Parise could not perform light or medium work. A person who could not perform light or medium work may be capable of sedentary work. Or the person might be disabled. The quoted analysis does not support one conclusion over the other.

The Commissioner alternatively argues that there was no error in the ALJ's conclusion because there is no medical evidence supporting greater limitations than those found by the ALJ, relying in part on *Oak v. Astrue*, No. 1:09-cv-0617-WTL-TAB, 2010 U.S. Dist. LEXIS 78830, at *5-7 (S.D. Ind. Aug. 4, 2010). In *Oak*, although the plaintiff suffered from carpal tunnel syndrome, the ALJ found she had no grasping or manipulative limitations. The court rejected the plaintiff's argument that the ALJ erred and that carpal tunnel syndrome must result in grasping or manipulative limitations.

However, the ALJ's finding in *Oak* was based on the testimony of a medical expert who testified that, even with the plaintiff's carpal tunnel syndrome, the plaintiff was unlimited in her ability to use her hands. *Oak v. Astrue*, No. 1:09-cv-0617-WTL-TAB, 2010 U.S. Dist. LEXIS 78830, at *6 (S.D. Ind. Aug. 4, 2010). Here, the state agency medical experts may have implicitly concluded that Parise was unlimited in his use of his hands. But, as noted above, the ALJ discounted those experts' opinions, in part because they appeared to fail to account for Parise's carpal tunnel syndrome. The Commissioner cannot discount those opinions for not accounting for Parise's carpal tunnel syndrome and then rely on those opinions as evidence that Parise's carpal tunnel syndrome permitted the full range of sedentary work.

The Commissioner also cites *Ross v. Astrue*, No. 08-C-450, 2009 U.S. Dist. LEXIS 26747, at *13 (E.D. Wis. Mar. 17, 2009), as saying the "ALJ reasonably accommodated claimant's carpal tunnel syndrome by limiting her to sedentary work where no medical source opined that she 'needed an accommodation concerning her hands'". (ECF No. 18 at 4.) However, in *Ross* the plaintiff's treating physician opined that she could use her hands only 20 percent of the day. The ALJ discounted this opinion, and provided an appropriate explanation for doing so, noting that the limitation was not supported by the medical record. *Ross v. Astrue*, No. 08-C-450, 2009 U.S. Dist. LEXIS 26747, at *13-14 (E.D. Wis. Mar. 17, 2009). No such explanation was offered here. The ALJ never explained why

Parise had no limitations in the use of his hands despite suffering from carpal tunnel syndrome that was severe enough to require surgery.

A claimant's RFC must be based on all evidence in the record, including the claimant's testimony. 20 C.F.R. §§ 404.1545(a), 416.945(a). Parise testified that his carpal tunnel syndrome makes it hard for him to grab things and occasionally causes him to drop things. (Tr. 51-52.) The ALJ never explicitly addressed this testimony, but she offered general comments regarding Parise's statements as to the severity of his impairments. She stated, "After considering careful consideration (sic) of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence of record." (Tr. 26.)

The discussion that follows this boilerplate focuses on Parise's other impairments and does not address Parise's carpal tunnel syndrome other than to note that the resulting surgery was an exception to the generally conservative treatment that Parise received for his other impairments. (Tr. 26.) Parise's drug use or his having exercised in an attempt to lose weight (*see* Tr. 27) do not appear to be relevant to his claim that he was limited in using his hands.

The ALJ also stated that "the medical opinion evidence failed to validate most of the claimant's allegations of impairment. The medical opinion evidence indicated that

the claimant was capable of at least sedentary work with some postural, environmental, mental, and social limitations." (Tr. 27.) The court finds this statement empty and unhelpful. The ALJ does not identify which "medical opinion evidence" she is referring to. If it is the opinions of the state agency medical consultants, as noted above, the ALJ discounted these opinions in part because they appeared to fail to consider Parise's carpal tunnel syndrome.

In sum, the ALJ failed to build the requisite "accurate and logical bridge," *see Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018), between her recognition that Parise's carpal tunnel syndrome was a severe impairment and her finding that Parise had no limitation in the use of his hands. Carpal tunnel syndrome severe enough to require surgery may be reasonably expected to result in some limitation in a claimant's ability to use his hands. *See, e.g.*, *Pyle v. Colvin*, No. 2:12-cv-266, 2013 U.S. Dist. LEXIS 104771, at *26 (N.D. Ind. July 25, 2013) ("Carpal tunnel syndrome affects the manipulation of the hands, yet the ALJ did not provide for any manipulation limitations or explain how the limitations he found were consistent with his finding that Pyle suffered severe carpal tunnel syndrome. The ALJ must address this direct conflict on remand."). Parise testified that he continued to suffer limitations as a result of his carpal tunnel syndrome, and the ALJ failed to fully comply with SSR 16-3p in explaining why she found that Parise's symptoms were not as severe as he alleged.

Although evidence of the extent to which carpal tunnel syndrome limits Parise is slim, the court cannot predict with confidence that the ALJ will reach the same conclusion on remand. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Therefore, the ALJ's error was not harmless. If the ALJ accepted Parise's testimony, it may support a finding of disability. (Tr. 60-62 (testimony of vocational expert that a person with Parise's limitations who was limited to only occasional grasping would be disabled).)

> Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.

SSR 96-09p (emphasis in original).

Finally, Parise asks that the court directly award benefits rather than remand the matter for rehearing. "[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Israel v. Colvin*, 840 F.3d 432, 442 (7th Cir. 2016). Unresolved is the extent to which Parise's carpal tunnel syndrome limits his ability use his hands in a manner required for sedentary work. Parise's testimony lacks specificity:

> Q How does, what sort of symptoms do you experience with your bilateral carpal tunnel?

> A Just hard feeling, hard making fists, hard to grab things.
>
> Q Okay. Do you drop things occasionally?
>
> A I have.

(Tr. 51-52.) What does he mean when he says these tasks are "hard"? Does he mean that it simply takes longer than they used to, or does attempting to do them result in severe pain? Is he able to function adequately for a time before he suffers symptoms? What kinds of things does he have a hard time grabbing? What kinds of things has he dropped? How often?

Moreover, the court notes that the evidence is not one-sided. For example, despite now claiming that he is disabled because he is unable to use his hands, he completed a function report on April 27, 2014, in which he represented that "Using hands" was one of the few domains unaffected by his alleged impairments. (Tr. 246.)

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to § 405(g), sentence four, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of December, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge